```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| PETER ANEKWE,<br><br>                    Plaintiff,<br><br>-against-<br><br>FREDERICK BERNSTEIN, et. al.,<br><br>                    Defendants. | No. 21 CV 11108 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the 12(b)(1) and 12(b)(6) motion to dismiss Plaintiff *pro se* Peter Anekwe's Complaint[1] filed by Defendants Frederick Bernstein and Albert Acrish ("Defendants").[2] Plaintiff opposes the motion.[3] For the reasons below, the motion is GRANTED, and the Complaint is DISMISSED with prejudice.

I.   Background[4]

   A. The Parties

Plaintiff is a prisoner of the State of New York, in the custody of the New York State Department of Corrections and

---

[1] Complaint ("Compl."), dated December 17, 2021 (dkt. no. 2).
[2] See Defendants' Memorandum of Law in Support of its Motion to Dismiss the Complaint ("Def.'s Mot."), dated February 15, 2023 (dkt. no. 22); see also Defendants' Reply Memorandum of Law in Further Support of its Motion to Dismiss the Complaint ("Def.'s Reply"), dated May 22, 2023 (dkt. no. 31).
[3] See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl.'s Opp'n"), dated May 8, 2023 (dkt. no. 28).
[4] The facts set forth below are taken from the Complaint and presumed to be true for the purposes of this motion.

1

Community Supervision ("DOCCS").  (Compl. ¶ 3.)  He is currently confined in the Fishkill Correctional Facility in Beacon, New York.  (Id.)  The events relevant to Plaintiff's claim occurred while Plaintiff was confined, and received medical treatment, in Green Haven Correctional Facility ("Green Haven") in Stormville, New York.  (Id. ¶ 7.)

Defendant Frederick Bernstein was the Medical Director of Green Haven at the time Plaintiff was confined there.  (Id. ¶ 4.)  Defendant Albert Acrish ("NP Acrish") was a nurse practitioner at Green Haven while Plaintiff was confined there, acting as Plaintiff's medical provider.  (Id. ¶ 5.)

**B. Plaintiff's Relevant Medical History**

In January 2009, Plaintiff was seen by NP Acrish regarding wrist pain and limited range of motion caused by a mass protruding from his right wrist (the "mass").  (Id. ¶¶ 9-11.)  Based on a visual examination, NP Acrish concluded that the mass was a "ganglion cyst."  (Id. ¶ 12.)  Plaintiff alleges that he requested to be seen by a specialist and asserts that NP Acrish denied the request because ganglion cysts contain nerves and ligaments that prevent removal.  (Id. ¶¶ 16-17.)

NP Acrish prescribed pain medication and an elastic wrist brace to treat the allegedly misdiagnosed mass.  (Id. ¶¶ 14-15.)  Defendant Bernstein signed four permits to allow Plaintiff to

2

continue wearing a wrist brace at Green Haven, the last of which is dated May 16, 2016.  (Id. ¶ 26.)

In May 2016, Plaintiff was sent to Fishkill Correctional Facility's Regional Medical Unit (the "RMU") for reasons unrelated to the mass.  (Id. ¶ 18.)  At the RMU, Plaintiff alleges that he encountered another inmate who was promptly sent to a specialist after complaining of a similar mass.  (Id. ¶¶ 19-21.)  Plaintiff subsequently sent a letter dated May 29, 2016, to NP Acrish, again requesting to see a specialist.  (Id. ¶ 22.)  On July 8, 2016, NP Acrish made note of Plaintiff's second request for specialist care in Plaintiff's ambulatory health record.  (Compl. ¶ 23.)

On September 8, 2016, Plaintiff was sent to the RMU to see Dr. MaGill, a specialist, regarding the mass.  (Id. ¶ 24.) While the Complaint does not specify the exact diagnosis, Plaintiff asserts that, during this visit, Dr. Magill accurately diagnosed the mass, concluding that the damage to his wrist was "beyond a ganglion cyst" and that surgery was necessary.  (Id. ¶ 25.)  From January 2017 to August 2019, Plaintiff underwent three surgical operations on his wrist, each followed by a round of physical therapy at the Catskill Regional Medical Center. (See id. ¶¶ 27-36.)  Plaintiff alleges, however, that he continues to experience limited wrist mobility.  (See id.)

3

### C. Exhaustion of DOCCS Administrative Remedies

On January 31, 2017, Plaintiff initiated a DOCCS departmental grievance request regarding the alleged inadequate medical treatment. (Id. ¶ 37.) On September 12, 2018, Plaintiff's grievance request was unanimously denied by the Central Office Review Committee ("CORC").[5] (Compl. p. 60.)

### D. Procedural History

Plaintiff asserts claims under 42 U.S.C § 1983, alleging that Defendants, acting under the color of State Law, deprived Plaintiff of Constitutionally guaranteed rights. (Compl. ¶ 1.) Plaintiff delivered the Complaint to the prison mail system on December 17, 2021. (Id. p. 9.) The Complaint was received by the SDNY Pro Se Office on December 28, 2021. (Id. p. 1.)

On February 15, 2023, Defendants filed a motion to dismiss the Complaint, asserting, among other things, that Plaintiff's claims are barred because they were filed after the applicable statute of limitations expired. (See Def.'s Mot. § II.) Plaintiff opposes the motion, asserting that his claims are timely in light of relevant tolling rules. (See Pl.'s Opp'n § 2.) Specifically, Plaintiff asserts that the statute of limitations is tolled due to: (1) the continuing violation

---

[5] CORC is the highest appellate body for DOCCS grievance requests.

4

doctrine; and (2) the Prison Litigation Reform Act's (the "PLRA") mandatory exhaustion of administrative remedies. (Id.)

## II. Legal Standard

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 545. On a 12(b)(6) motion to dismiss, the Court may only consider the complaint," any "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Bellin v. Zucker, 6 F.4th 463, 473 (2d Cir. 2021). Although the statute of limitations is ordinarily an affirmative defense raised in the answer, it may be decided on a 12(b)(6) motion if the defense appears on the face of the complaint. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).

"In a Section 1983 action," federal courts in New York "apply the three-year statute of limitations period applicable to state personal injury actions pursuant to C.P.L.R. § 214." Bonilla v. City of New York, No. 20-cv-1704, 2020 U.S. Dist. LEXIS 211171, at *5 (E.D.N.Y. Nov 12, 2020) (citing Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002)). New York's tolling rules are also applied. Abbas v. Dixon, 480 F.3d 636,

5

641 (2d Cir. 2007) ("Although federal law determines when a Section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled . . . ."). Finally, submissions of a *pro se* litigant are afforded special solicitude and must be construed liberally and interpreted "to raise the strongest arguments that they suggest." See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 248, 248 (2d Cir. 2006)).

### III. Discussion

Defendants assert that Plaintiff's claims are untimely and should be dismissed because the Complaint was filed after the applicable statute of limitations period expired. Plaintiff argues that his claims are timely because they were tolled pursuant to the continuing violation doctrine and because he was required to exhaust administrative remedies.

While the continuing violation doctrine is inapplicable, Plaintiff is correct in asserting that the statute of limitations period is tolled for the mandatory exhaustion period.[6] However, despite Plaintiff's receiving the benefit of all applicable tolling rules, his claims are untimely and barred by the statute of limitations.

---

[6] Additionally, though not raised by Plaintiff, the Court assumes, without deciding, that Plaintiff's claims were also tolled pursuant to Executive Orders 202.8 and 202.67 for the purposes of this motion.

6

### A. Applicable Tolling Rules

#### 1. The Continuing Violation Doctrine

Plaintiff argues that the three-year statute of limitations period is tolled pursuant to the continuing violation doctrine. However, the continuing violation doctrine is inapplicable, and, in any event, its application would be unfavorable to Plaintiff.

Normally a Section 1983 claim accrues once the "plaintiff knows or has reason to know of the injury which is the basis of his action." Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994) (quoting Singleton v. New York, 632 F.2d 185, 191 (2d Cir. 1980)). The continuing violation doctrine is an exception to the normal knew-or-should-have-known accrual date, applicable when a plaintiff alleges "a series of separate acts that collectively constitute one 'unlawful [act].'" See Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 103 (2002)). When the continuing violation doctrine is applicable, the statute of limitations period does not begin until the time of the last act among the series of acts alleged by the plaintiff. See id.

Here, even assuming that Plaintiff does allege a series of acts that constitute one unlawful act, the continuing violation doctrine is inapplicable. Plaintiff knew of the injury that is the basis for this action on September 8, 2016, when his injury

7

was accurately diagnosed by Dr. MaGill.  However, the Complaint alleges that Frederick Bernstein's and Albert Acrish's most recent interactions with Plaintiff were May 16, 2016, and July 8, 2016, respectively.  Thus, the last act by the Defendants occurred no later than July 2016, which is earlier than the accrual date under the normal standard.

Under the normal knew-or-should-have-known approach, the statute of limitations period commences on September 8, 2016.  Alternatively, if the continuing violation doctrine was applied, the statute of limitations period would commence at an earlier date, either in May or July of 2016.  Given Plaintiff's *pro se* status, the Court applies the latest accrual date of September 8, 2016.

### 2. Mandatory Exhaustion of Administrative Remedies

Plaintiff correctly argues that the three-year statute of limitations period is tolled while Plaintiff exhausted all available DOCCS administrative remedies.  The PLRA provides that inmates must exhaust all available administrative remedies before bringing an action regarding prison conditions under federal law.  42 U.S.C.S. § 1997e(a) (2004).  Moreover, the Supreme Court holds that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."

Porter v. Nussle, 534 U.S. 516, 532 (2002).  Thus, the applicable statute of limitations is tolled while a prisoner actively pursues his administrative remedies as required by the PLRA, but is not tolled during the period between the accrual date and the initiation of the administrative remedy process. Gonzalez v. Hasty, 651 F.3d 318, 323-24 (2d Cir. 2011).

Here, the three-year statute of limitations period was tolled while Plaintiff exhausted his administrative remedies through the DOCCS departmental grievance process.  Accordingly, the applicable statute of limitations period is tolled from January 31, 2017, through September 12, 2018, the duration of Plaintiff's mandatory exhaustion process.[7]

### 3. New York COVID Tolling

The applicable statute of limitations period is also tolled pursuant to Executive Order 202.8.  Effective March 20, 2020, Executive Order 202.8 tolled "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to . . . the Civil Practice Law and Rules."  N.Y. Exec. Order No. 202.8. Subsequent executive orders extended this tolling period through November 3, 2020.  See N.Y. Exec Order No. 202.67.

---

[7] The duration of Plaintiff's mandatory exhaustion process (Jan. 31, 2017 – Sept. 12, 2018) was a total of 589 calendar days.

9

Courts in this District have held that Executive Order 202.8 tolls the statute of limitations period in Section 1983 claims brought in federal court in New York.  See, e.g., Doe v. State Univ. of N.Y. Purchase Coll., 617 F. Supp. 3d 195, 208 (S.D.N.Y. 2022) (finding that Executive Order 202.8 tolls the applicable statute of limitations for Section 1983 and Title IX claims because the New York statute of limitations and tolling rules apply).  The Court assumes, without deciding, that Executive Order 202.8's tolling provisions apply and assumes that Plaintiff's claims were also tolled from March 20, 2020, through November 3, 2020.[8]

### B. Application of Statute of Limitations and Tolling Periods to Plaintiff's Claims

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 on December 17, 2021.[9]  Plaintiff's claims accrued when he was properly diagnosed by Dr. Magill on September 8, 2016,[10] and, thus, the applicable three-year statute of limitations would

---

[8] Executive Order 202.8 was effective (Mar. 20, 2020 – Nov. 3, 2020) for a total of 228 calendar days.
[9] Under the "prison-mailbox rule," documents of *pro se* prisoners are treated as filed on the date delivered to the prison mail system.  See Houston v. Lack, 487 U.S. 266, 273-75 (1988).
[10] Section 1983 actions filed in federal court in New York are subject to a three-year statute of limitations period, commencing at the time a plaintiff "knows or has reason to know of the injury."  Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir. 2015).

ordinarily bar any claim filed after September 8, 2019.[11]  Though the Court applies every possible toll, raised or unraised, to which Plaintiff might be entitled, the Complaint was nonetheless filed after the statute of limitations expired.

Even assuming that the statute of limitations was tolled while Plaintiff exhausted available administrative remedies and while Executive Order 202.8 was in effect, to be timely, Plaintiff's Complaint had to be filed by December 3, 2021. Plaintiff's Complaint was filed on December 17, 2021, fourteen days after the expiration of the statute of limitations period.[12] Accordingly, Plaintiff's Complaint is untimely and barred by New York's three-year statute of limitations.

---

[11] The applicable three-year statute of limitations period is a total of 1,095 calendar days.

[12] Under the applicable three-year statute of limitations period, Plaintiff's action is timely if commenced within 1,095 calendar days of the accrual date of claims.  Plaintiff commenced this action 1,926 calendar days after the claims accrued (Sept. 8 2016 – Dec. 17, 2021).  However, the statute of limitations period is tolled for a total of 817 calendar days due to the mandatory exhaustion of administrative remedies and Executive Order 202.8.  Nonetheless, the statute of limitations period was running for 1,109 calendar days before the Complaint was filed, fourteen days longer than the applicable three-year statute of limitations period.

### IV. Conclusion

For the reasons above, Defendants' motion is GRANTED, and the Complaint is DISMISSED with prejudice.

**SO ORDERED.**

Dated:   July 13, 2023
         New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge